IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**MARY J. SMITH,**

        Plaintiff,

    v.                                    **CIVIL ACTION NO. 5:23-CV-243**
                                                  Judge Bailey

**SWN PRODUCTION (OHIO), LLC,**
a foreign limited liability company
formerly known as Triad Hunter, LLC
and **SWN PRODUCTION COMPANY, LLC,**
a foreign limited liability company**,**

        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before this Court are Defendant SWN Production Company, LLC's Motion for Summary Judgment [Doc. 53] and Plaintiff's Motion for Partial Summary Judgment [Doc. 56]. After both Motions were fully briefed, this case was stayed pending a decision of the Supreme Court of Appeals of West Virginia ("WVSCA") on the rehearing of *Romeo v. Antero Resources Corp.*, 2024 WL 4784706 (W.Va. Nov. 14, 2024). [Doc. 63]. After the WVSCA issued its decision on rehearing, *Romeo v. Antero Resources Corp.*, 2025 WL 1650051 (W.Va. June 11, 2025), supplemental memoranda were filed. [Docs. 64 & 65]. Accordingly, both Motions are ripe for decision.

Turning to the first filed Motion, SWN Production Company, LLC ("SWNPC") bases its Motion on the arguments that: (1) the lease in question contains an express waiver of the implied duty to market; (2) that the taking of post production expenses is compliant with

1

*Wellman v. Energy Resources, Inc.*, 210 W.Va. 200, 557 S.E.2d 254 (2001) and *Estate of Tawney v. Columbia Natural Resources, L.L.C.*, 219 W.Va. 266, 633 S.E.2d 22 (2006); and (3) that West Virginia Code § 37C-1-3 does not create an independent cause of action.

In arguing that the lease is *Wellman* and *Tawney* compliant, SWNPC cites *Young v. Equinor USA Onshore Properties, Inc.*, 982 F.3d 201 (4th Cir. 2020), the effect of which was called into question by the *SWN Production Co., LLC v. Kellam*, 247 W.Va. 78, 875 S.E.2d 216 (2022) decision.

For example, the *Young* Court declared "although *Leggett* [*v. EQT Production Co.*, 239 W.Va. 264, 800 S.E.2d 850 (2017)] didn't overrule *Wellman* and *Tawney*, its criticism of those cases and its endorsement of the work-back method inform our analysis here." *Young*, 982 F.3d at 207.  And, ultimately, it justified its interpretation of the lease in question by concluding "[e]specially in light of *Leggett*, West Virginia law demands nothing more." *Id.*, 982 F.3d at 209.  While the actual holdings of *Leggett v. EQT Prod. Co.*, 239 W.Va. 264, 276–77, 800 S.E.2d 850, 862–63 (2017) ("*Leggett 2*") were effectively overruled by the West Virginia Legislature when it adopted a clarifying amendment, Senate Bill 360, to West Virginia Code § 22-6-8(e), in the spring of 2018, the obiter dicta of *Leggett 2* criticizing *Tawney* and *Wellman* has now been expressly rejected by a 4-1 majority of the WVSCA.

As this Court wrote in *Kellam v. SWN Prod. Co., LLC*, 2022 WL 16707192 (N.D. W.Va. Sept. 2, 2022) (Bailey, J.):

2

While [then] Chief Justice Hutchinson's concurring opinion in **Kellam** is not binding, it certainly discusses some of the shortcomings of the **Young** decision:

> Fourth and finally, I feel compelled to discuss a case that was not addressed by the majority opinion: **Young v. Equinor USA Onshore Properties, Inc.**, 982 F.3d 201 (4th Cir. 2020). The **Young** court was asked on appeal to review a complicated "work-back" method used by an oil-and-gas lessee to make deductions to a lessor's royalty payment. The district court had found the lease language describing the deductions to be insufficient because it "'merely state[d] that the lessee will deduct post-production costs,' yet '[said] absolutely nothing as to how those costs would be calculated, other than to leave the amount of the deduction wholly to the lessee's discretion.'" **Id**. at 207–08. On appeal, the **Young** court relied upon the now-defunct analysis used by this Court in **Leggett** to reverse the district court and approve the lease's language. The **Young** court

rejected any notion that a lease should have a clear, mathematical formula to calculate how deductions will be taken:

> "*Tawney* doesn't demand that an oil and gas lease set out an Einsteinian proof for calculating post-production costs. By its plain language, the case merely requires that an oil and gas lease that expressly allocates some post-production costs to the lessor identify *which* costs and *how much* of those costs will be deducted from the lessor's royalties. These conditions may be satisfied by a simple formula[.]"

*Id*. at 208 (emphasis in original).

I question the *Young* court's statement that *Tawney* only requires a lease to contain a "simple formula" and not "an Einsteinian proof" describing how a lessee's post-production costs of getting oil and gas to market will be deducted

from a lessor's royalty. This statement is correct only if the oil-and-gas lessee is actually taking simple, clear, and unambiguous deductions from the royalties. The problem that I see demonstrated by the case law is that oil-and-gas lessees insist on taking estimated costs or vague, malleable, impossible-to-measure deductions from royalties – in essence, using Einsteinian methods that are incomprehensible to all but the most clever industry accountants. Lessees are using accounting-based chicanery and devising deductions designed to completely consume the lessor's royalty through a "death by a thousand cuts" strategy. *See generally*, Adam H. Wilson, *Without A Leggett to Stand on: Arguing for Retroactive Application of West Virginia's Amended Flat-Rate Well Statute*, 124 W.Va. L. Rev. 259, 282 (2021) ("At first blush, the net-back method may sound like an equitable way to allocate costs between lessor and lessee; however, lessees use the net-back method to fleece lessors of their valuable minerals. Gas companies ... best effectuate this

by creating wholly-owned subsidiary companies that charge the mineral owner with what would be otherwise impermissible deductions."). Frankly, if the lease does not contain a clear explanation of any and all deductions or how those deductions are calculated, understandable by both the oil-and-gas lessee and the mineral owning lessor, then no contract has been formed and the deductions cannot be taken.

      The rules of contract formation are taught in the first weeks of law school. "It is elementary that mutuality of assent is an essential element of all contracts." **Bailey v. Sewell Coal Co.**, 190 W.Va. 138, 140, 437 S.E.2d 448, 450 (1993). For this mutuality to exist, "it is necessary that there be a proposal or offer on the part of one party and an acceptance on the part of the other." *Id*. "The contractual concept of 'meeting of the minds' or 'mutual assent' relates to the parties having the same understanding of the terms of the agreement reached." **Messer v.**

*Huntington Anesthesia Grp., Inc.*, 222 W.Va. 410, 418, 664 S.E.2d 751, 759 (2008).

*Kellam*, 2022 WL 16707192, at *1–2.

As noted above, SWNPC contends that inasmuch as the implied duty to market is not applicable, it need not comply with *Tawney*. Following West Virginia law, however, as this Court must, the waiver of the implied duty to market does not relieve SWNPC of the requirement to comply with the second and third prongs of *Tawney*.

In *Kellam*, the WVSCA held:

[W]e do not *need* to address our interpretation of the implied covenant of marketability in the case at bar because that covenant is not implicated. In this case there is a contractual provision addressing the allocation of post-production costs such that an implied covenant is not necessary to ascertain the parties' intent in contracting. Specifically, Paragraph 4(B) of the Kellams' lease provides that the lessor shall be paid a one-eighth royalty for the market price of the oil, gas, and coalbed methane gas "less any charges for transportation, dehydration and compression paid by Lessee to deliver the oil, gas, and/or coalbed methane gas for sale." As such, the implied covenant of marketability is clearly inapplicable because, insofar as the lease is not silent on the issue of postproduction cost allocation, there is no gap for that implied covenant to fill. The parties have freely negotiated a contract in which they appear to have expressed an intent to share the burden of post-production costs in the manner indicated therein. Therefore,

the question whether that provision satisfies the additional requirements set out in *Tawney* that the lease identify with particularity the costs to be deducted and identify a method of calculating those deductions, as explained infra, is not a question this Court can answer, but is instead relegated to the finder of fact.

247 W.Va. at 88, 875 S.E.2d at 226 (2022) (emphasis in original).

Furthermore, the WVSCA has held that "[w]here an oil and gas lease contains an *express* or implied duty to market, the requirements of *Wellman* . . . and *Tawney* . . ., extend to the point of sale. . . ." Syl. Pt. 3, *Romeo v. Antero Res. Corp.*, 2024 WL 4784706 (W.Va. Nov. 14, 2024) (emphasis added); *Wellman*, 210 W.Va. at 210, 557 S.E.2d at 264 ("The rationale for holding that a lessee may not charge a lessor for 'post-production' expenses appears to be most often predicated on the idea that the lessee . . . also has a duty, either express, or under an implied covenant, to market the oil or gas produced.")

Here, plaintiff's Lease contains an express duty to market in that plaintiff's royalties are based on the amount of gas "produced from each well drilled . . . and *marketed*." [Doc. 54-1 at 2 (emphasis added)]. Plaintiff's royalty is "one-eighth (1/8) of the price *paid to Lessee*. . . ." [Id. (emphasis added)]. Clearly, SWNPC has an express duty to market the oil and gas produced pursuant to plaintiff's Lease.

Under *Tawney*, a lease must identify with particularity the specific deductions the lessee intends to take from the lessor's royalty. This Court does not believe that "less any charges for gathering, transportation, compression or line loss" meets that standard.

[Doc. 54-1 at 2].  For example, does this include only direct costs, or does it also include the panoply of indirect costs such as the ones identified by Judge Goodwin in *W.W. McDonald Land Co. v. EQT Prod. Co.*, 983 F.Supp.2d 790, 815–16 (S.D. W.Va. 2013), *opinion clarified* (Jan. 21, 2014) including, "personnel costs, indirect costs, production management costs, depreciation and return on capital investment," "meals and entertainment," "uniforms," "meter operation and repair," and "personal property taxes?"

The third *Tawney* requirement is that the lease indicate the method of calculating the amount to be deducted from the royalty for such post-production costs.  In *Young*, the Fourth Circuit essentially deleted that requirement from the test, perhaps due to the fact that the Court believed that *Tawney* was not solid precedent and that *Leggett* had approved the "work-back" method, both of which were refuted in *Kellam*.  982 F.3d at 207–08.

In *W.W. McDonald Land Co.*, Judge Goodwin reasoned that "'[r]easonableness' is a common legal standard that has been used by courts for more than a century" and is commonly understood to mean "fair; just; ordinary or usual; not immoderate or excessive; not capricious or arbitrary."   983 F.Supp.2d at 808 (internal citations omitted).  While "reasonableness" may be a common legal standard, the *Tawney* Court did not hold that to allow a lessee to deduct post-production costs from the lessor's royalty, the lease must generically recite a common legal standard; rather, it held that the lease must "indicate the method of calculating the amount to be deducted[.]" See Syl. Pt. 10, *Tawney*, 219 W.Va. 266, 633 S.E.2d 22.  Plainly, "reasonableness" is not a method of calculation.  Indeed, the word "method" means "a procedure or process for attaining an object: such as

... a way, technique, or process of or for doing something." The word "calculate" means "to determine by mathematical processes." Thus, a "method of calculation" is a procedure, technique, or process for mathematically determining something. The word "reasonable" is merely an adjective, not a mathematical formula or process. The same goes for the terms "actual" and "incurred," as neither of these terms indicate any particular mathematical process.

Most importantly, the words "reasonable," "actual," and "incurred" give prospective lessors no information as to how deductions will be calculated. Stating in a lease that deductions will be "reasonable" does not describe any particular mathematical process nor objective limitation. Instead, it forces prospective lessors to rely on the lessee's conclusory representation that the calculation will be "reasonable" without giving the prospective lessor an opportunity to evaluate for himself or herself whether the lessee's methods are "reasonable." As Judge Goodwin in *W.W. McDonald Land Co.* acknowledged, the word "reasonable" "[is a] relative term [ ] with no fixed or rigid meaning." 983 F.Supp.2d at 808 (internal citation omitted). As such, it tells prospective lessors utterly nothing about the specific method of calculation that will be used to determine the amount deducted from their royalty. The fact that "reasonableness" is a legal standard for courts to use when ultimately ruling on whether a lessee's deductions were permissible under the law does not mean that mere use of the word "reasonable" gives lay persons a sufficient indication of "the method of calculating the amount to be deducted from the royalty," as required by *Tawney*, at the outset of the lease. Similarly, stating in a lease that the lessee will deduct "actual" post-production costs or "incurred" post-production costs tells prospective lessors

utterly nothing about the method of calculation used to derive those "actual" and/or "incurred" post-production costs.

In other words, if the *Tawney* Court had intended the third prong of Syllabus Point 10 to require only that the lessee affirmatively state in the lease that its deductions will be "reasonable," "actual," and/or "incurred," then the Court would have said that instead of saying that the lease must "indicate the method of calculating the amount to be deducted." However, as previously discussed, the *Tawney* Court was concerned with making sure that lease language intended to permit deductions for post-production costs would clearly state the method of calculating those deductions so that lessors are informed as to exactly how their royalties are to be calculated. *See* 219 W.Va. at 273–74, 633 S.E.2d at 29–30. Accordingly, the *Tawney* Court held in plain terms that lease language intended to allocate a portion of the post-production costs to the lessor(s) must "indicate the method of calculating the amount to be deducted from the royalty for such post-production costs." *Id*. at 274, 633 S.E.2d at 30. Thus, the construction of *Tawney* to require only the use of the word "reasonable" is inconsistent not only with the plain language of Syllabus Point 10 of *Tawney*, but also with the *Tawney* Court's intent. A holding that the mere use of the words "actual" and/or "incurred" satisfies *Tawney*'s method of calculation requirement would likewise be inconsistent with both the plain language and intent of *Tawney*.

There would be no reason for the Court to specifically include the third prong (that is, that the lease set forth the method of calculating the amount to be deducted) in addition to the other two (2) prongs if it could be satisfied by simply stating that the costs to be deducted will be "reasonable," "actual," and/or "incurred." Mere use of the words

11

"reasonable," "actual," and/or "incurred" in a lease to describe the costs to be deducted from the prospective lessor's royalty does not give the prospective lessor any useful information beyond that required by the first two prongs of the *Tawney* standard.  It is highly unlikely that when the WVSCA drafted the third prong of Syllabus Point 10 of *Tawney*, the Court's goal was to ensure only that lessees make the gratuitous, unspecific, and ultimately useless assertion in their leases that the costs they deduct will be "reasonable," "actual," and/or "incurred."  This generic, conclusory assertion essentially states that the lessee will not charge the lessor for unreasonable post-production costs that the lessee made up out of thin air and did not actually incur — something that the lessee was already prohibited from doing by law.

In fact, with regard to this lease, SWNPC testified that its actual method of calculating the amount to be deducted is a two-step process.  First, SWNPC allocates gross deductions attributable to a number of different wells behind a particular gathering system to the well level.  This is performed on a "weighted average basis."  The weighted average basis is determined by taking MCF, MMBtu, and "gas analysis" measurements at the wellhead and then measuring the barrels of natural gas liquids and MCF and MMBtu of residue gas at the tailgate of a facility such as MarkWest's Mobley facility.  Second, once deductions are allocated to the well level, they are allocated to individual royalty owners on a pooled basis.

Plaintiff's Lease clearly and unambiguously does not discuss the method by which deductions would be calculated from the facility level to the well level—*i.e.* the first step in SWNPC's methodology.  The Lease does not mention "weighted average basis" or any language that describes the weighted average basis. The Lease neither indicates how and

by what unit of measurement the wellhead gas would be measured nor the same for natural gas liquids and residue gas at the tailgate of a facility. The Lease does not discuss that a "gas analysis" would be used at the wellhead to "estimate" the volume of natural gas liquids at the wellhead. The best that SWNPC can argue—and that plaintiff disputes—is that the Lease's "lesser interest" paragraph (¶ 6) and pooling paragraph (¶ 7) indicate a method of calculating deductions from the well level to the individual royalty owner level. However, nowhere in those paragraphs or anywhere else in the Lease does it indicate the first step of SWNPC's method of calculation.

While Chief Judge Kleeh recently ruled that West Virginia Code § 37C-1-3 does not provide for an independent cause of action, ***McArdle Fam. P'ship v. Antero Res. Corp.***, 2024 WL 1287617 (N.D. W.Va. Mar. 26, 2024), that Section is clearly applicable to the damages which may be awarded in this case.

This Court finds that the lease in question in this case fails to satisfy the ***Tawney*** test as a matter of law and, therefore, the defendants are prohibited from taking post production deductions.

Accordingly, SWNPC's Motion must be **DENIED**.

Turning to the Plaintiff's Motion for Partial Summary Judgment [Doc. 56], this Court's finding that the Lease in question fails to meet the requirements of ***Tawney*** mandates that this Court **GRANT** the Motion [Doc. 56].

For the reasons stated above, Defendant SWN Production Company, LLC's Motion for Summary Judgment [**Doc. 53**] is **DENIED** and Plaintiff's Motion for Partial Summary Judgment [**Doc. 56**] is **GRANTED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: August 4, 2025.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE